IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

SECURE SIGNAL, INC., a Florida
Corporation, and NATIONAL SATELLITE
SPORTS, INC., a Florida Corporation

Plaintiffs

vs.

KLEINMAN, SALTZMAN & BOLNICK P.C.,
A New York professional corporation;
and GARY M. BOLNICK, Esq., a citizen of the
state of New York.

Defendants

Case No.

08 CIV. 1937

JUDGE KARAS

## COMPLAINT

COME NOW Plaintiffs, Secure Signal, Inc. ("SSI") and National Satellite Sports, Inc. ("NSS"), both corporations organized under the laws of the state of Florida and being in good standing therein, and file this Complaint naming as Defendants: the law firm of Kleinman, Saltzman & Bolnick, P.C. (hereafter, "KSB"), and Gary M. Bolnick, Esq. (hereafter, "Bolnick"), and shows this Honorable Court as follows:

### Jurisdiction and Venue

1. This Complaint sets forth a dispute with complete diversity of citizenship between the Plaintiffs and the collective Defendants, and with an amount in controversy in excess of $75,000. Consequently, jurisdiction in this Court is proper under 28 U.S.C. § 1332.

2. As a case sitting in federal court by virtue of diversity of citizenship, this honorable Court should apply the substantive laws of the state of New York.

Page 1 of 12

3. KSB is a New York State law firm, practicing in the form of a professional corporation. The principal place of business for KSB is within Rockland County, New York.

4. Bolnick is a citizen of New York, who practices law as a partner at KSB. Bolnick therefore resides and/or transacts business in Rockland County, New York.

5. The Defendants named in this Complaint all reside and/or continuously transact business within Rockland County, which is located in the White Plains Division of the United States District Court for the Southern District of New York. Consequently, venue in this Court is proper pursuant to 28 U.S.C. § 1391.

6. Jurisdiction is proper as to all the Defendants.

## Facts

### The Business Operations of SSI and NSS Require Legal Representation in the State of New York

7. SSI and NSS are Florida corporations which have as their principal place of business Palm Beach County, Florida.

8. At all times relevant to the instant Complaint, the principal business operations of NSS were the acquisition, marketing, licensing and distribution of certain pay per view programming to commercial entities, such as bars, taverns, restaurants, racetracks and casinos. The programming licensed to clients of NSS was delivered to the clients for purposes of public display (using televisions or monitors), with the technical means of conveying programming being by either satellite or cable transmissions.

9. Pursuant to the various agreements under which NSS acquired its rights to market and license commercial pay per view programming, NSS had the authority and legal standing to identify ("Police", or "Police the Signal") and prosecute commercial establishments which unlawfully intercepted and broadcast for public display pay per view programming (the Events"). It was essential for NSS to Police the Signal of Events in order that NSS could protect the rights in the intellectual property it had acquired.

10. Pursuant to the standard and overall business operations of NSS, as well as those of similarly situated businesses, NSS has been compelled to retain the representation of companies which Police pay per view Events. These companies retain auditors who, during the live broadcast of an Event identify commercial establishments which are unlawfully broadcasting the Events ("Pirates" or "Infringers"). The Pirates are identified by the auditors, who prepare sworn affidavits attesting to the relevant facts (e.g., the name and address of the establishment, the time the auditor was present, the number of patrons present, the number of televisions and monitors displaying the Event, distinguishing characteristics of the commercial establishment, etc.).

11. At all times relevant to this Complaint, SSI was engaged in the business of representing companies ("Licensors") such as NSS in Policing signals of pay per view Events.

12. Pursuant to the business operations of SSI, its agreements with Licensors permitted SSI to retain legal counsel and law firms to prosecute claims for Piracy against Infringers identified by auditors.

13.    The claims filed by counsel identified by SSI to represent SSI and the Licensors are brought in the name of the Licensor under 47 U.S.C. §§ 553 and/or 605 of the Federal Communications Act (47 U.S.C.A.- the "Act").

14.    In 1999, NSS and SSI retained as legal counsel The Lonstein Law Offices, P.C. (The "Lonstein Firm"). Through its representation of SSI, the Lonstein Firm eventually provided legal representation in New York regarding not only NSS, but other "Licensor-clients" for whom SSI provided auditing services, such as Entertainment By J & J, Inc. ("EJJ"); Garden City Boxing Club, Inc. ("GCB"); Top Rank, Inc. ("TR"), and Kingvision Pay Per View Ltd. ("KV"). All legal representation was to be on a contingency basis.

15.    Pursuant to relevant agreements between NSS, SSI, and Licensor-clients of SSI, SSI was entitled to recover a portion of any proceeds obtained in a lawsuit based upon Infringers identified by SSI. Therefore, SSI had a legal, equitable and financial interest in any claim (the "Legal Matters") brought by The Lonstein Firm.

16.    From the outset of the legal relationship between SSI and the Lonstein Firm, the latter was well-aware of SSI's legal, equitable and financial interest in any claim brought by The Lonstein Firm pursuant to the Legal Matters.

### The Discovery by the Plaintiffs of Activities by KSB and Bolnick

17.    In transmitting approximately eight hundred (800) files to The Lonstein Firm, SSI and NSS had certain expectations regarding the disposition of the claims the Lonstein Firm would initiate in federal courts throughout New York. Specifically, while the Plaintiffs recognized that a certain number of lawsuits initiated by the Lonstein Firm would settle, or otherwise be resolved, the Plaintiffs also recognized that a great number of the Legal Matters would result in NSS or SSI's Licensor-clients gaining judgments.

18. Because the Plaintiffs recognized that the Lonstein Firm would gain a large number of judgments, an affirmative duty to pursue the collection of judgments was set forth as a duty of the Lonstein Firm in its agreements to represent NSS and SSI's Licensor-clients.

19. In December 2005, the Plaintiffs discovered that Bolnick and KSB were representing NSS and SSI's Licensor-clients in post-judgment collection matters.

20. No agreement of any kind existed between the Plaintiffs and KSB and Bolnick regarding legal representation. The Plaintiffs were unaware of:

    A) When the Defendants were retained;

    B) Under what authority the Defendants were operating;

    C) What documents the Defendants had received or were in possession of;

    D) What instructions the Defendants had received or were operating under;

    E) What actions were being taken by the Defendants on behalf of NSS and SSI's Licensor-clients (e.g., were demand letters being sent? had levies or garnishments occurred?);

    F) What monies the Defendants were collecting;

    G) Under what fee arrangement the Defendants were operating;

    H) Whether any monies had been remitted by the Defendants-and to whom. those monies were remitted;

21. Certainly, it was apparent the Defendants were not in compliance with the Rules Governing the Practice of Law in New York, insofar as they had no written retainer agreements with the Plaintiffs, were almost certainly settling judgments on a contingency fee basis without the assent or approval of the Plaintiffs, and were not preparing written settlement statements with regard to any settlements.

22. Further, upon information and belief, the Defendants were not recording in the appropriate County records any judgments they had received which were in favor of NSS or SSI's Licensor-clients.

23. When the Plaintiffs discovered the activities of the Defendants, the Plaintiffs demanded a full accounting, and that any monies due to NSS or SSI's Licensor-clients be immediately remitted to the Plaintiffs.

24. In response to the demands made by the Plaintiffs, the Defendants have refused to either provide an accounting or turn over monies. With regard to the issue of monies held by the Defendants at the time the Defendants received the Plaintiffs' demands, the Defendants' sole action has been to file an Interpleader action in the Supreme Court of the State of New York, County of Rockland, Index No. 2007-06064, with regard to a small amount of monies being held by the Defendants.

## COUNT ONE- NEGLIGENCE

25. The Plaintiffs re-allege the allegations set forth in Paragraphs one through twenty-four.

26. The Defendants acted to provide legal representation of the Plaintiffs in connection with judgments procured from the Legal Matters in post-collection proceedings. Pursuant to this "engagement", regardless that it was unknown to the Plaintiffs, the Defendants owed to NSS and SSI, and SSI's Licensor-clients, a reasonable duty of care in carrying out their legal representation.

27. The Defendants had a duty to use such skill, prudence and diligence as other members of the legal profession commonly possess and exercise. Further, Defendants were required to utilize the knowledge and skill necessary to handle post-judgment

collection proceedings related to the Legal Matters. Moreover, the Defendants had a duty to inform the Plaintiffs of matters material to representation.

28. The Defendants neglected Defendants' reasonable duty of care regarding their post-judgment collection actions related to the Legal Matters by, *inter alia*::

- A) Failing to disclose to the Plaintiffs when the Defendants were retained;

- B) Not disclosing under what authority the Defendants were operating;

- C) Not identifying what documents the Defendants had received or were in possession of;

- D) Failing to inform the Plaintiffs what instructions the Defendants had received or were operating under;

- E) Failing to disclose what actions were being taken by the Defendants on behalf of NSS and SSI's Licensor-clients (e.g., were demand letters being sent? had levies or garnishments occurred?);

- F) Not disclosing what monies the Defendants were collecting/receiving;

- G) Failing to disclose under what fee arrangement the Defendants were operating;

- H) Not disclosing whether any monies collected by the Defendants had been remitted by the Defendants as monies due to its "client(s)"-and to whom. those monies were remitted;

- I) Failing to take actions to collect judgments, failing to properly record judgments so as to render them useful in post-judgment collections, or failing to take actions in a timely manner.

- J) Failing to timely provide the Plaintiffs with current and correct information, status reports, or settlement statements about collection efforts regarding judgments related to the Legal Matters.

- K) Generally failing to conduct the normal and ordinary due diligence associated with post-judgment collection proceedings akin to those related to the Legal Matters.

L) Upon information and belief, failing to provide personnel with a level of skill, knowledge and expertise necessary for effective representation of the Plaintiffs.

M) Failing to exercise the requisite skill, prudence and diligence as other members of the legal profession (i.e., their peers in Rockland County) commonly possess and exercise.

N) Upon information and belief, failing to supervise personnel providing legal representation of the Plaintiffs and/or SSI's Licensor-clients.

O) Failing to account for files sent to them by the Lonstein Firm, rendering said files for all accounts "missing", and rendering the Plaintiffs unable to provide accurate information to SSI's Licensor-clients, which continues to present the Plaintiff with substantial liability.

P) Settling judgments and denoting them as "satisfied" without proper authorization from the Plaintiffs, failing to adequately document settlements or provide the settlement agreement or release to the proper Plaintiff.

Q) Failing to account for settlement monies obtained for NSS or SSI's Licensor-clients as required by the Rules Governing the Practice of Law in New York, and refusing to provide documentation supporting any expenses paid, taken from settlements, or allegedly due to the Defendants.

R) Refusing to disclose the terms of their legal representation, or provide the Plaintiffs with any retainer agreements.

29. The Defendants further neglected their duty of care by failing and then refusing to provide the Plaintiffs with the case caption of any proceedings filed in a state court regarding post-judgment collection actions related to the Legal Matters (e.g., levies or garnishments), copies of each legal pleading filed with regard to post-judgment proceedings (e.g., levies or garnishments) which would have allowed the Plaintiffs to the identity for their records the precise plaintiffs, the court and jurisdiction in which the pleading was filed, the civil action number and identity of the named defendants. The Defendants also failed and/or refused to provide any answers or responsive pleadings

interposed by judgment debtors, which would have apprised the Plaintiffs of the identity of any attorneys representing a judgment-debtor.

WHEREFORE, Plaintiffs pray that this Court grant judgment against Defendants, jointly and severally, for negligence, as follows:

    A.    Compensatory damages in the amount of not less than Two Hundred and Fifty Thousand Dollars ($250,000.00);

    B.    Taxable costs;

    C.    Pre-judgment interest as permitted by law;

    D.    Post-judgment interest; and

    E.    For such other further relief as is just and proper.

### COUNT TWO- Breach of Fiduciary Duty

30. The Plaintiffs reallege the allegations set forth above in paragraphs one through twenty-four.

31. As legal counsel for both NSS and SSI (and for SSI's Licensor-clients), regardless of the Plaintiffs' lack of knowledge that the Defendants were acting on their behalf, KSB and Bolnick owed a fiduciary duty to NSS and SSI (as well as for SSI's Licensor-clients).

32. The fiduciary duty owed by the Defendants alluded to in Paragraph 31 was of the very highest order. As noted by Deputy Attorney General Paul J. McNulty in his prepared remarks before the Lawyers for Civil Justice Membership Conference in New York City on December 12, 2006, the attorney-client privilege and the fiduciary duty stemming from that relationship is, "one of the oldest and most sacrosanct privileges in American law." The fiduciary duty arising upon the Defendants embarking upon representation of the Plaintiffs and SSI's Licensor-clients was undisputedly well-known to KSB and Bolnick.

33. By taking those actions, and non-actions, fully delineated in Paragraph 28 (A)-(V) above, the Defendants violated their fiduciary duty to the Plaintiffs.

34. Because of the actions, and non-actions delineated in Paragraph 28 (A)-(V), NSS and SSI (and SSI's Licensor-clients) suffered substantial damages.

WHEREFORE, Plaintiffs pray that this Court grant judgment against Defendants, jointly and severally, for breach of fiduciary duty, as follows:

- A. Compensatory damages in the amount of not less than Two Hundred and Fifty Thousand Dollars ($250,000.00);
- B. Taxable costs;
- C. Pre-judgment interest as permitted by law;
- D. Post-judgment interest; and
- E. For such other further relief as is just and proper

### COUNT THREE- An Action for Accounting

35. The Plaintiffs reallege the allegations contained in Paragraphs one through twenty-four.

36. A fiduciary relationship existed between the Plaintiffs and the Defendants KSB and Bolnick.

37. Theoretically, the Defendants could have received as many as approximately 800 judgments from the Lonstein Firm regarding the Legal Matters, in which the Defendants proceeded with post-judgment collection proceedings.

38. Unknown to the Plaintiffs are:

- A) The total number of judgments received by the Defendants;
- B) The identity of which of the Legal Matters produced each judgment received by the Defendants;

C) What actions were taken by the Defendants to collect upon the judgments;

D) The amount for which each the judgments received by the Defendants settled;

E) Insofar as the Plaintiffs never received settlement statements from the Defendants (or know if such settlement statements exist), unknown to the Plaintiffs are the amount of monies remitted by the Defendants to the Lonstein Firm in the resolution (or garnishment, levy, etc.) or settlement of any of the judgments received by the Defendants, and whether or not the Defendants indicated any portion of monies remitted to the Lonstein Firm as "fees" due the Lonstein Firm;

F) Again, insofar as the Plaintiffs never received settlement statements from the Defendants (or know if such settlement statements exist), unknown to the Plaintiffs are the amount of monies indicated by the Defendants as due to their "client(s)", as would be required information in the mandatory settlement statements to be prepared by attorneys in New York in the resolution of a contingency fee matter;

G) Whether the Defendants escrowed monies received via collection activities in accounts which segregated monies deriving from different judgment-creditors;

H) Whether the Defendants co-mingled monies derived from judgments held by different judgment creditors;

I) Whether or not fees and costs accrued in a post-judgment collection matters (e.g., filing and service fees) were paid only from monies due the appropriate judgment creditor;

39. Inquiries 38 (A) through (J) as set out above are not exclusive, but just exhibit the principal questions which can only be resolved by the imposition of an Accounting.

40. To the best of the Plaintiffs' knowledge, in not one single instance in which the Defendants settled a judgment which arose from one of Legal Matters, did the Defendants provide to the Plaintiffs a final settlement statement in compliance with, e.g., the New York Lawyer's Code of Professional Responsibility.

41. In addition, To the best of the Plaintiffs' knowledge, in not one single instance in which the Defendants settled a judgment they received which arose from one of Legal Matters, did the Lonstein Firm prepare a final settlement statement in compliance with the New York Lawyer's Code of Professional Responsibility.

42. In the instant matter, an Accounting should be provided to NSS and SSI.

WHEREFORE, Plaintiffs pray that this Court grant an Order imposing an Accounting as against the Defendants, with the responsibility for accountancy fees be determined upon presentation and review by the Court of the accountant's final report.

Dated: February 21, 2008.

By: /s/ Richard A. Klass, Esq.
16 Court Street
Brooklyn, NY 11241
(718) 643-6063
RK-9477
Attorney for Plaintiffs

skip/2008/Bolnick complaint